[Cite as *In re Money*, 2012-Ohio-4450.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| IN RE GUARDIANSHIP OF | : | |
| PAULINE A. MONEY, INCOMPETENT | | |
| | : | C.A. CASE NO. 24956 |
| | : | T.C. CASE NO. 10-GRD-279 |
| | : | (Appeal from Common Pleas |
| | | Court - Probate Division) |
| | : | |

· · · · · · · · ·

**O P I N I O N**

Rendered on the 28th day of September, 2012.

· · · · · · · · ·

Edward M. Smith, Atty. Reg. No. 0010272, 500 Performance Place, 109 N. Main Street, Dayton, Ohio 45402
  Attorney for Appellee Pauline A. Money

W. James Owen, Atty. Reg. No. 0014126, 2600 Far Hills Avenue, Suite 315, Dayton, Ohio 45419
  Attorney for Appellee Matt Money

Mark W. Evans, Atty. Reg. No. 0084953, 320 Regency Ridge Drive, Centerville, Ohio 45459
  Attorney for Appellant Sean Vallone

· · · · · · · · ·

GRADY, P.J.:

{¶ 1} This appeal is from a final order of the probate court entered pursuant to R.C.

2111.02(A), granting the application of Matt Money to be appointed guardian of the person

and estate of his mother, Pauline A. Money, who is incompetent. The court also rejected a competing application for appointment filed by Sean Vallone, who is Pauline Money's former attorney.

**{¶ 2}** Vallone filed a timely notice of appeal from the final order appointing Matt Money as his mother's guardian. He presents two assignments of error for our review:

**{¶ 3}** FIRST ASSIGNMENT OF ERROR:

"THE PROBATE COURT'S FINDING THAT TRANSFERS OF THOUSANDS OF DOLLARS OF PAULINE MONEY'S FUNDS TO MATT MONEY WERE 'GIFTS' IS SUPPORTED BY INSUFFICIENT EVIDENCE OR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE RECORD CONTAINS CLEAR AND CONVINCING EVIDENCE THAT PAULINE MONEY LACKED THE MENTAL CAPACITY TO MAKE GIFTS."

**{¶ 4}** SECOND ASSIGNMENT OF ERROR:

"THE PROBATE COURT ABUSED ITS DISCRETION BY APPOINTING AN UNSUITABLE GUARDIAN OF THE ESTATE WHERE THE EVIDENCE DEMONSTRATES THAT THE GUARDIAN BREACHED HIS FIDUCIARY DUTIES TO THE WARD AND IS INCAPABLE OF PERFORMING HIS STATUTORY DUTIES BECAUSE OF RESULTING FINANCIAL CONFLICTS OF INTEREST."

**{¶ 5}** The underlying dispute in the present case is, appropriately, about money. Pauline Money suffers from Alzheimer's disease as well as dementia. The record reflects that for many years, both before and after the onset of Mrs. Money's conditions, Matt, her

only son, obtained monies from his mother that he used for his personal benefit and the benefit of his wife and children. These transfers increased in recent years.

{¶ 6} In the year 2007, the transfers to Matt absorbed 22.5% of his mother's income; in 2008, 22.9%; in 2009, 51.9%; and, in 2010, 65%. The transfers increased in 2010 to 65%. The total of these transfers was $75,485.37. As the transfers increased in size, Mrs. Money was required to deplete her savings to meet her own needs.

{¶ 7} On August 11, 2010, Matt obtained a durable power of attorney from his mother. He immediately withdrew $9,300.00 from Mrs. Money's account and transferred the sum to himself. Matt explained that his purpose was to prevent his mother's further exploitation in telephone scams, which had cost $30,000.00.

{¶ 8} The competing applications for guardianship appointments filed by Matt Money and Sean Vallone were referred to a magistrate. Following a hearing, the magistrate recommended that Matt Money be appointed his mother's guardian. Vallone filed objections, arguing that Matt is not a suitable person for the appointment because he had taken advantage of his mother in effecting the transfers.

{¶ 9} The probate court overruled Vallone's objections and adopted the magistrate's recommendation. The court made the following pertinent findings:

> Sean's first objection is based on the argument that Matt is not an appropriate guardian of Pauline's estate because "the record reflects that Matthew Money financially exploited the Ward's assets for many years and owes the estate thousands of dollars." However, the evidence is not clear and convincing on this issue. Certainly, Sean argued that Matt took financial

advantage of Pauline, but evidence was also presented demonstrating that Pauline is simply a mother who loved her only child and enjoyed providing for her son, daughter-in-law and grandchildren. While Sean's objections allege that Matt owes his mother's estate thousands of dollars, Matt claims the money he was received was in the form of gifts. Although the objections argue that Matt used his mother's funds for his or his family's personal expenses, such as spa treatments for his wife, car repairs for his son, his professional memberships, etc., Matt's testimony indicates these funds were spent in the way Pauline had requested, including in some instances using the money to provide Christmas gifts. Additionally, Pauline's funds were sometimes spent for simple things such as taking Matt and his children, Pauline's grandchildren, out to dinner.

"An *inter vivos* gift occurs when there is an immediate, voluntary, gratuitous, and irrevocable transfer of property by a competent donor to another. A determination of whether all of the elements of a gift were proven presents a mixed question of law and fact that must be decided upon all of the facts and circumstances of a given case." Based on the testimony presented and the evidence before the court, much of the money that Matt received from Pauline was intended to be a gift. The gifts were immediate; there is no evidence that they were not voluntary; they were clearly gratuitous; and they were irrevocable. No evidence was presented establishing that Pauline expected or wished to be repaid for the money she gave to Matt.

* * *

Finally, the first objection also argues that Matt is not acting with his mother's financial best interest at heart because he continued to ask his mother for substantial sums of money even though he was aware that she was suffering from diminished capacity. However, the record indicates that Pauline wanted to give money to Matt and his family, and had been doing so for years. Therefore, Matt is not acting adversely to Pauline's interests by continuing to act in the same manner as he always had in his relationship with his mother.

* * *

Although Sean voiced concerns about whether appointing Matt as guardian of Pauline's estate was in her best interest, the evidence is not clear and convincing to support a finding that Matt is not a suitable guardian. The facts clearly demonstrate that Pauline loves her son and has been providing for him and his family's well being for many years, for long before she began to suffer from lack of capacity. Additionally, Matt testified that he would be absolutely willing to follow the court's orders with regards to expenditures of Pauline's money. Therefore, there is competent, credible evidence that having Matt Money as the guardian of the estate of Pauline Money is in Pauline's best interest.

{¶ 10} The probate court has broad discretion in appointing guardians. *In re Guardianship of Roth*, 7th Dist. Mahoning No. 04 MA 199, 2005-Ohio-5057. Decisions regarding the appointment of a guardian will not be reversed on appeal absent an abuse of

discretion. *In re Estate of Bednarczuk*, 80 Ohio App. 3d 548, 609 N.E.2d 1310 (12th Dist. 1992).

{¶ 11} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 12} A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. V. River Place Community Urban Redevelopment, Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 13} Vallone argues that the trial court abused its discretion when it found that the money transfers from his mother to Matt were gifts. Vallone cites *In re Estate of Kirkland*, 175 Ohio App.3d 73, 2003-Ohio-421, 885 N.E.2d 271, which held that the recipient must prove by clear and convincing evidence that a gift was made. Vallone argues that because the record demonstrates that Pauline's disabilities are profound, Matt's self-serving testimony does not rise to the level of clear and convincing evidence that Pauline was competent to form the donative intent required to make an *inter vivos* gift.

{¶ 14} The issue that R.C. 2111.02(A) required the probate court to determine was not whether the transfers from Pauline to his mother were legally valid gifts. The issue for

determination was whether it was in Pauline's best interest to appoint her son, Matt, guardian of her person and her estate. *In re Estate of Bednarczuk.* The court credited Matt's promise "to follow the court's orders with regards to expenditures of Pauline's money," as the court was entitled to do. Furthermore, being his mother's guardian, Matt will be precluded from having any dealings with her estate except with the approval of the probate court. R.C. 2109.44. We cannot find that the court abused its discretion, that it acted unreasonably, in concluding that it is in Pauline's best interest to appoint Matt her guardian.

{¶ 15} In his second assignment of error, Vallone argues that the probate court abused its discretion in appointing Matt because the record demonstrates he abused his fiduciary duties as Pauline's attorney-in-fact. The record demonstrates that, using that power, Matt transferred over $9,000.00 to himself and used over $6,000.00 of that for his personal use and benefit of his family.

{¶ 16} Vallone cites case law holdings to the effect that such transfers are to be viewed with suspicion, and that "attorneys-in-fact act outside the scope of their authority when they use a general, durable power of attorney to make gifts to themselves." *MacEwen v. Jordan*, 1st Dist. No. C-020431, 2003-Ohio-1547, paragraph 11.

{¶ 17} We agree that these matters cast a cloud over Matt's suitability as a guardian. Further, as Vallone points out, it is unlikely that Matt, as guardian, would seek to recoup any of the payments to himself for the benefit of his mother's estate, creating a potential conflict of interest. Nevertheless, those concerns are subsumed by the probate court's finding that the transfers were genuine gifts in accord with Pauline's desires and her relationship with her only

son and his family over the course of many years.   We cannot find that the court's conclusion in that regard lacked a sound reasoning process, so as to be an abuse of discretion.

{¶ 18}  The first and second assignments of error are overruled.   The judgment of the probate court will be Affirmed.

DONOVAN, J., And HALL, J., concur.

Copies mailed to:

Edward M. Smith, Esq.
W. James Owen, Esq.
Mark W. Evans, Esq.
The Honorable Alice O. McCollum